IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

**DARRELL FINT,**

    **Plaintiff,**

v.                                                         Case No.: 5:17-cv-04043

**BRAYMAN CONSTRUCTION
CORPORATION, a foreign corporation,**

    **Defendant.**

## MEMORANDUM OPINION and ORDER

    Pending is Plaintiff's Motion to Compel Discovery Responses from Defendant, Brayman Construction Corporation ("Brayman"). (ECF No. 42). In the Motion, Plaintiff seeks production of an incident report and two sets of photographs that were withheld from discovery by Brayman on the basis of work product protection. On May 23, 2018, the undersigned held a hearing on the motion to compel and ordered Brayman to produce the withheld materials to the undersigned for *in camera* review. In addition, the parties were given until June 9, 2018 to supply any additional argument or information in support of their respective positions.

    Having reviewed the documents and considered the submissions, the Court **DENIES** Plaintiff's Motion to Compel for the reasons set forth below.

**I.    Relevant History**

    On January 31, 2017, Plaintiff Darrell Fint (also sometimes referred to as "Fint") fell headfirst approximately nine feet into an unprotected hole while working for Brayman

1

at a construction site in Hinton, West Virginia. (ECF No. 1). Fint was extricated from the hole and promptly transferred to a local trauma center. As a result of the fall, Fint suffered a cervical spine fracture and dislocation, with a spinal cord injury, and these conditions required surgical repair, rehabilitation, and physical therapy. (ECF No. 1-17).

Shortly after Fint's fall, Brayman's Corporate Safety Director, Jody Porterfield, was notified of the accident. Porterfield, who was located at Brayman's home office in Saxonburg, Pennsylvania, contacted Thomas Moore, Brayman's on-site Safety Director in Hinton, and instructed him to begin an investigation and to complete an incident report, which was Brayman's usual protocol after an accident. Moore followed those instructions and generated a nineteen-page document entitled "First Report of Incident." The First Report of Incident ("First Report") included a description of the accident; the names of the witnesses; the safety equipment used; the injuries received; witness statements dated February 1, 2017 through February 7, 2017; and five photographs taken of the accident site.

According to defense counsel, two days after the accident, on February 2, 2017, Brayman's liability insurance carrier contacted counsel "concerning her likely retention for pre-suit investigation of [Fint's accident] in anticipation of litigation." (ECF No. 51 at 6). Defense counsel was officially retained to represent Brayman on February 8, 2017. (*Id.*). That same day, Brayman's President, Frank Piedimonte, instructed the corporate safety director, Porterfield, to prepare a second investigative report of Fint's accident, which was entitled "Incident Summary Report." *(See* Affidavit of Frank Piedimonte*).* According to Piedimonte, the Incident Summary Report ("Second Report") was not an incident report prepared in the ordinary course of business, but was a document created solely at Piedimonte's request, because he believed that Fint would sue Brayman as a

result of his fall. (*Id.*). Piedimonte attributes his belief that a lawsuit or claim was imminent to the severity and nature of Fint's injuries, as well as the unusual circumstances surrounding the fall. (*Id.*). The Second Report consisted of three pages.

On February 28, 2017, defense counsel and a representative of Brayman's liability insurance carrier arrived at Brayman's Hinton work site and took photographs of the accident scene and construction site. The first set of photographs consisted of nine pictures taken by defense counsel, and the second set of photographs consisted of twelve pictures taken by the liability insurance carrier's representative.

On December 18, 2017, in response to discovery requests regarding investigations into Fint's accident, Brayman produced to Plaintiff a complete copy of the First Report, which was Bates-stamped BRAY000188-BRAY000206. (ECF No. 42-2 at 7). Brayman did not produce the two sets of photographs taken on February 28, 2017 or the Second Report, but did attach a privilege log with its discovery responses, asserting that the two sets of photographs and Second Report were being withheld pursuant to the attorney-client privilege. In response to a separate discovery request seeking the personnel file of Thomas Moore, Brayman produced a copy of the Second Report, which was apparently present in Moore's personnel file, but redacted the Second Report in its entirety, except for the title. (ECF No. 42 at 2).

On April 13, 2018, Plaintiff's counsel wrote to defense counsel, objecting to the assertion of the attorney-client privilege as a basis for withholding the Second Report and two sets of photographs and arguing that Brayman had failed to provide factual grounds for the privilege claim. (ECF No. 42-5 at 1). The parties were unable to resolve their differences; accordingly, Plaintiff filed the instant Motion to Compel on April 27, 2018. On May 10, 2018, Brayman filed an amended response to Plaintiff's discovery requests

3

and provided an amended privilege log. (ECF No. 51-3 at 7-8). In the amended log, Brayman clarified that the photographs were taken by counsel and an insurance adjuster; the Incident Report was completed by Jody Porterfield at the direction of Frank Piedimonte in anticipation of litigation; and the documents were withheld on the basis of work product protection rather than attorney-client privilege. (*Id.* at 7).

## II. <u>Relevant Law</u>

Although state law governs the scope of the attorney-client privilege in cases pending in federal court, "[i]n matters involving work product protection ... federal courts apply federal law, even in diversity cases." *Mason C. Day Excavating, Inc. v. Lumbermens Mut. Cas. Co.*, 143 F.R.D. 601, 605 (M.D.N.C. 1992); *see, also, Cont'l Cas. Co. v. Under Armour, Inc.*, 537 F. Supp. 2d 761, 769–74 (D. Md. 2008) (collecting cases). Federal Rule of Civil Procedure 26(b)(3) codifies the doctrine of work product protection, stating as follows:

> (A) *Documents and Tangible Things*. Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent). But, subject to Rule 26(b)(4), those materials may be discovered if:
>
> > (i) they are otherwise discoverable under Rule 26(b)(1); and
> >
> > (ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.
>
> (B) *Protection Against Disclosure*. If the court orders discovery of those materials, it must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation.

As can be deduced from the rule's language, work product is separated into two categories: (1) opinion work product, or in other words, "mental impressions,

4

conclusions, opinions, or legal theories" of an attorney or other representative, which is "absolutely" immune from discovery; and (2) fact work product consisting of "documents prepared by an attorney that do not contain the attorney's mental impressions," which may be discovered "upon a showing of both a substantial need and an inability to secure the substantial equivalent of the materials by alternate means without undue hardship." *In re Grand Jury Proceedings #5 Empanelled January 28, 2004*, 401 F.3d 247, 250 (4th Cir. 2005); *see also Nat'l Union Fire Ins. Co. v. Murray Sheet Metal Co.*, 967 F.2d 980, 983-84 (4th Cir. 1992). The work product doctrine protects not only those materials prepared by a party and its agents, including its attorney, but also those materials prepared by "agents for the attorney." *United States v. Nobles*, 422 U.S. 225, 238-39 (1975).

"The protection afforded by the work-product doctrine is broader than the attorney-client privilege; the work-product doctrine is 'designed to balance the needs of the adversary system: promotion of an attorney's preparation in representing a client versus society's general interest in revealing all true and material facts to the resolution of a dispute.'" *MAG Mut. Ins. Co. v. Brown*, No. 6:14-CV-353, 2015 WL 13648556, at *12–13 (D.S.C. July 24, 2015) (quoting *In re Martin Marietta Corp.*, 856 F.2d 619, 624 (4th Cir. 1988)). For the work product doctrine to apply, "[t]he document must be prepared *because of* the prospect of litigation when the preparer faces an actual claim or a potential claim following an actual event or series of events that reasonably could result in litigation." *Nat'l Union Fire Ins. Co.* 967 F.2d at 984 (emphasis added). "[M]aterials prepared in the ordinary course of business or pursuant to regulatory requirements or for other non-litigation purposes" do not constitute "documents prepared in anticipation of litigation" and are not entitled to work product protection. *Solis v. Food Emp'rs Labor*

5

*Relations Ass'n*, 644 F.3d 221, 232 (4th Cir. 2011) (quoting *Nat'l Union Fire Ins. Co.*, 967 F.2d at 984). The burden rests with the party seeking work product protection to establish that the prospect of litigation was the "driving force" behind the preparation of the document. *Id.* "Once proven, the burden shifts to the contesting party to prove substantial need for and inability to obtain the substantial equivalent of the materials by any other means." *Westfield Ins. Co. v. Carpenter Reclamation, Inc.*, 301 F.R.D. 235, 249 (S.D.W. Va. 2014). "This burden is a difficult one and is satisfied only in rare situations, such as those involving witness unavailability." *Smith v. Scottsdale Ins. Co.*, 40 F. Supp. 3d 704, 721 (N.D.W. Va. 2014) (quoting *Bartlett v. State Farm Mut. Auto. Ins.,* 206 F.R.D. 623, 628 (S.D. Ind.2002)).

### III. <u>Discussion</u>

The parties each assert one argument that may be dispatched with little discussion. Brayman argues that Plaintiff's four-month delay in raising a challenge to the privilege log constitutes a waiver under this district's local rules and justifies a denial of the motion to compel. Although Brayman is correct that the local rule requires motions to compel to be brought within thirty days after discovery answers are due, but are not served, or after answers are timely served, but are unsatisfactory, Brayman filed an amended privilege log on May 10, 2018. In essence, Brayman conceded that its original log was inadequate. Moreover, through its amended privilege log, Brayman changed the legal basis upon which it claimed protection from discovery for the withheld documents and effectively restarted the thirty-day clock. Plaintiff now challenges the merits of the amended privilege log. Therefore, Plaintiff's challenge to the amended log and associated motion to compel are timely.

Plaintiff argues that the inadequacy of the original privilege log provides grounds to compel production of the withheld documents. Plaintiff is correct that the failure to serve a compliant privilege log may result in a waiver of the privilege or protection. *See Mezu v. Morgan State Univ.,* 269 F.R.D. 565, 577 (D. Md. 2010) ("Absent consent of the adverse party, or a Court order, a privilege log (or other communication of sufficient information for the parties to be able to determine whether the privilege applies) must accompany a written response to a Rule 34 document production request, and a failure to do so may constitute a forfeiture of any claims of privilege."). However, waiver is not automatic and is generally reserved for cases involving unjustified delay, inexcusable conduct, and bad faith. *See Smith v. James C. Hormel Sch. of Va. Inst. of Autism*, No. 3:08cv00030, 2010 WL 3702528, at *4-5 (W.D. Va. Sept. 14, 2010). Plaintiff does not argue those circumstances here, and this matter does not appear to fall within that category of cases.

Turning to the merits of the amended privilege log and the motion to compel, Brayman has provided information establishing that workers at the Hinton, West Virginia work site notified Brayman's corporate headquarters of Fint's accident shortly after its occurrence. Upon learning of the accident, Brayman's corporate safety director, Jody Porterfield, instructed the on-site safety director, Thomas Moore, to institute an investigation of the accident and collate the required paperwork pursuant to the company's usual post-accident protocol. Mr. Moore's efforts undoubtedly were carried out in the ordinary course of Brayman's business, or pursuant to regulatory requirements, or for other non-litigation purposes, such as quality assurance or safety improvement. Thus, the investigation initiated upon Brayman's first notification of Fint's accident resulted in documents that are not work product. As such, the fruit of that investigation—

that being, the First Report—was properly produced to Plaintiff.

Within a couple of days of the initial notification, Brayman alerted its liability insurance carrier of Fint's accident. The carrier, in turn, contacted and then retained defense counsel. The same day that defense counsel was officially retained, Frank Piedimonte, the President of Brayman, requested a second investigative report of the accident to be completed by Jody Porterfield. Although not explicitly stated by counsel, the implication is clear: Piedimonte requested Brayman's upper management-level safety director to prepare an internal investigative summary after having discussions with Brayman's insurance carrier and counsel. This implication is supported by the sworn testimony of Piedimonte, who stated that he instructed Porterfield to prepare the second report, because Piedimonte expected litigation to arise from the accident. Piedimonte explained in his affidavit that he felt litigation was imminent for two reasons: (1) Fint had suffered severe injuries in the fall; and (2) the circumstances surrounding the fall were unusual. Porterfield's investigative summary consisted of a three-page Second Report dated February 8, 2017. Based on the facts provided by Brayman and the affidavit of Frank Piedimonte, the undersigned finds that the Second Report is work product.

Approximately four weeks after Fint's accident, Brayman's attorney and insurance adjuster went to the Hinton work site and took photographs of the area near and around Fint's accident. Counsel for the defendant has represented that, from the start, her role was to investigate the accident in anticipation of litigation. Plaintiff has not disputed that representation. Therefore, the undersigned finds that the set of photographs taken by defense counsel is work product.

With respect to the photographs taken by Brayman's insurance adjuster, federal courts have been "reluctant to afford work product protection to claims files when the

8

insurance company investigates [a] claim, rather than retained counsel, since the routine and ordinary course of business of an insurance company includes claims investigations." *Gioioso v. Thoroughgood's Transp. LLC*, No. CV ADC-16-3841, 2017 WL 3726028, at *3 (D. Md. Aug. 28, 2017) (quoting *Lamar Advert. of S.D., Inc. v. Kay,* 267 F.R.D. 568. 577 (D.S.D. 2010)). Nonetheless, when the insurance company's primary purpose in creating a particular document is the anticipation of litigation, work product protection attaches to that document. Given the routine investigative duties of insurance adjusters, the question of whether a particular document was prepared in anticipation of litigation is more complicated and requires a "case-by-case analysis, considering the unique factual context of the given problem" *Id.* (quoting *Black & Veatch Corp. v. Aspen Ins. (UK) Ltd.*, 297 F.R.D. 611, 618 (D. Kan. 2014)). In this case, the insurance adjuster took the photographs at issue when she accompanied defense counsel to the work site. Defense counsel has represented that the purpose of the site visit was to investigate the merits of Plaintiff's anticipated claim. Defense counsel and Brayman's President, Frank Piedimonte, emphasize that Fint's accident was not a run-of-the-mill event for the company and, for that reason, they expected from the outset that it would lead to litigation. Accordingly, the record indicates that the photographs taken by the insurance adjuster were not part of a routine investigation, but were taken with an eye toward litigation. Thus, for the same reasons previously stated, the undersigned finds that these photographs constitute work product. Additionally, because neither the Second Report, nor the photographs, contain mental impressions, opinions, or conclusions of counsel, the undersigned finds that these materials fall within the category of fact work product.

   Having determined that the Second Report and two sets of photographs are fact work product, the burden shifts to Plaintiff to demonstrate a substantial need for the

materials and an inability to secure the substantial equivalent of the materials without undue hardship. Plaintiff speculates that the Second Report contains discoverable information regarding the reasons why Brayman decided to commence work at the Hinton site without first ensuring that employees were protected from open holes by using standard safety devices. Even if true, Plaintiff wholly fails to demonstrate an inability to obtain the same information through other, readily accessible avenues of discovery. For example, Plaintiff can simply depose the decision-makers at Brayman, or Rule 30(b)(6) representatives, and ask them to explain the reasons that Brayman proceeded without the requisite safety devices.

Similarly, Plaintiff speculates that the photographs should be produced, because they potentially include pictures of the work site as it appeared immediately before Fint's accident. Plaintiff argues that he was hospitalized for months after his fall and did not retain counsel until April 2017. Consequently, by the time he was able to obtain photographs, the site had changed dramatically. While there certainly could be merit to this type of argument, no such merit exists in this case. As Plaintiff pointed out at the hearing, photographs were taken very shortly after Fint's fall, which were attached to the First Report and provided to Plaintiff. These photographs establish that the work site had already been altered to prevent other similar accidents. Not surprisingly, the photographs taken by counsel and the adjuster on February 28, 2017, four weeks after the accident, do not represent the work site as it appeared at the time of Fint's fall. Accordingly, Plaintiff has failed to articulate a substantial need for the photographs. Further, Plaintiff has not demonstrated what, if any, effort he has made to investigate the existence of photographs taken of the site prior to his fall.

In summary, Plaintiff's Motion to Compel, (ECF No. 42), is **DENIED**. The

undersigned finds that the Second Report and two sets of photographs are fact work product entitled to protection from discovery. Having reviewed the materials *in camera*, the undersigned further finds that Plaintiff has not met his burden to demonstrate a substantial need for the information contained in the documents or an inability to obtain the substantial equivalent of the information without undue hardship.

The Clerk is directed to provide a copy of this Order to counsel of record.

**ENTERED:**  June 21, 2018

_____
Cheryl A. Eifert
United States Magistrate Judge