# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

## BECKLEY DIVISION

**DARRELL FINT,**

    **Plaintiff,**

v.                                                                           Case No.: 5:17-cv-04043

**BRAYMAN CONSTRUCTION
CORPORATION, a foreign corporation,**

    **Defendant.**

## MEMORANDUM OPINION AND ORDER

Pending is Travelers Insurance Company's Motion to Partially Quash Subpoena and Deposition Notice. (ECF No. 237). Plaintiff filed a memorandum in opposition to the motion, (ECF Nos. 242, 244), and Travelers Insurance Company ("Travelers") replied. (ECF No. 247). On Monday, April 8, 2019, the parties and Travelers appeared, by counsel, for a hearing on the motion. Having considered their arguments, the Court **GRANTS** Travelers' motion to partially quash.

Plaintiff served Travelers with a subpoena and notice to take a Rule 30(b)(6) deposition in the above-styled case. Travelers is the primary liability carrier providing coverage to Defendant Brayman Construction Corporation against two claims brought by Plaintiff: a deliberate intent claim asserted in the instant action and the underlying workers' compensation claim. Plaintiff seeks to question Travelers' corporate representative about seven topics. The first three topics involve benefits that have already been paid as a result of the workers' compensation claim. The last four topics involve

1

Travelers "reserves" related to the workers' compensation claim, both past and future, as well as Travelers' reserving process in general, and its procedure in reporting reserves to West Virginia's Insurance Commissioner.

Travelers does not object to the first three topics, but does object to any questions related to its reserves. Travelers argues that reserve data is absolutely protected from discovery as opinion work product, that its reserving process is confidential and proprietary, and that the information sought is irrelevant. For these reasons, Travelers asks the Court to quash the portion of the subpoena and notice of deposition pertaining to the last four topics.

In response, Plaintiff contends that reserve data is not work product, because the primary motivating purpose in creating reserves is not the anticipation of litigation; rather, reserves are created for a variety of statutory and business reasons. Plaintiff also argues that the reserve information is highly relevant to Defendant's entitlement to an offset for workers compensation benefits; particularly, in relation to Plaintiff's claim for future medical expenses. Plaintiff states that he has made a claim for future medical expenses that his economist has reduced to present day value. Defendant's economist counters that figure by opining that Plaintiff will suffer no loss for future medical expenses, because Travelers will be required to pay all invoices for reasonable and necessary medical care. In effect, Defendant argues a 100% offset for future medical expenses. Plaintiff asserts that the best evidence of Defendant's offset is Travelers' reserve for that category of damages. In support, Plaintiff relies on *Mooney v. Eastern Associated Coal Corp.,* 326 S.E.2d 427 (W. Va. 1984).

As the undersigned explained at the hearing, the issue of whether reserve information is protected as work product need not be addressed, because reserve data

simply is not relevant to the issues in this case. In *State ex. rel Erie Ins. Prop. & Cas. Co. v. Mazzone,* the Supreme Court of Appeals of West Virginia considered the relevancy of reserve data in a civil action alleging third-party bad faith. *Id.,* 625 S.E.2d 355 (W. Va. 2005). The Court reiterated that the threshold question in all disputes over the production of discovery materials is the relevancy of the requested information to the issues identified for trial. *Id.* at 358. Only after the information is determined to be relevant are questions of privilege and work product consequential. Following an explanation of the purpose of reserves and a discussion of common reserving techniques, the Court held that when presented with a request for the production of reserve information, the trial court must make a preliminary determination of whether the information is relevant based upon the unique factors presented in the case. *Id.* at 359-60. In making this determination, the trial court "should take into account the nature of the case, the methods used by the insurer to set reserves, and the purpose for which the information is sought, and only grant requests for disclosure when its findings of fact and conclusions of law support a determination that the specific facts of the claim in the case before it directly and primarily influenced the setting of the reserves in question." *Id.* at 360.

Here, Plaintiff indicates that he needs the reserve information to counter Defendant's contention that future medical expenses will have a 100% offset. However, the reserve has no bearing on the offset. As Travelers explained, reserves are set as estimates of financial exposure and are based upon a variety of factors. These estimates are adjusted over time as the factors change. In other words, a reserve is merely a picture of an adjuster's dollar assessment of a liability at one given point in time. However, a reserve cannot control the future medical bills that are incurred or paid in a workers' compensation case. Notwithstanding the reserve, Travelers will be responsible to pay

3

whatever future medical expenses it is obligated to pay by law or by contract. Consequently, the offset claimed by Defendant will depend upon information unrelated to the reserve. To the contrary, the offset will depend upon expert opinions regarding the likelihood of future medical expenses, the estimated cost of future medical care, and the portion of the medical costs likely to be borne by Defendant's workers' compensation carrier based upon historical data, contract terms, and other similar evidence.

In addition to its limitations as evidence of the offset, the reserve has limitations as admissible evidence. The process of setting a reserve typically will not meet the exacting requirements of federal law for supporting an expert opinion. Information generally required to establish future medical expenses and to calculate the present day value of those expenses is not likely to have been used in setting a reserve. Certainly, those factors would not be the only ones considered in arriving at a reserve, because, as Plaintiff pointed out, commercial insurance reserves have purposes other than simply to estimate the cost of a future liability. Thus, attempting to tie a future offset to a present-day reserve is confusing and misleading, not to mention inaccurate. In this case, the connection is even more tenuous as Travelers has contracted with a third-party, Paradigm, to pay the medical expenses. According to Travelers, the contract requires Paradigm to pay until Plaintiff reaches certain markers, at which time Travelers assumes responsibility. Accordingly, any reserve data pertinent to Plaintiff's future medical expenses would not reflect all future medical expenses—only those that might be anticipated after Plaintiff's condition satisfies the markers in the contract.

Plaintiff's reliance on *Mooney, supra,* is not persuasive. While *Mooney* involved a dispute over the way the aggregate value of workers' compensation benefits payable in the future should be calculated, the worker died in the workplace injury, leaving a widow and

one child. Accordingly, the question revolved around the proof necessary to value the dependents' death benefit. As an aside, the Supreme Court of Appeals of West Virginia noted that evidence had been produced at trial of a "reserve fund" established by the Workers' Compensation Commission, which represented "the Commissioner's estimate of the total value of an award of dependents' death benefits." *Mooney,* 326 S.E.2d at 431. The Court mused that if the fund did exist, and the fund was required to be set aside, and it was calculated with reasonable certainty, then that estimate would be the best proof of compensation benefits for the purposes of calculating excess damages under the deliberate intent statute. The Court added, however, that the Commissioner's figure could be challenged with competent evidence.

Clearly, the process of calculating a death benefit in order to set aside that money in a state-controlled fund is far different than the process used by a private insurer to reserve ongoing liabilities. For one thing, the latter reserves are revised with some frequency as they are intended to reflect significant changes in the company's exposure. In addition, the factors that must be considered in estimating future medical expenses vary considerably from those considered in a death benefit. Finally, the focus of Plaintiff's inquiry in this case is not the estimated total amount of future medical expenses to be incurred by Plaintiff, but rather the amount of the offset to which Defendant will be entitled based upon the portion of those expenses borne by Travelers or Paradigm.

As was more fully explained at the hearing, the undersigned finds that the reserve information is not relevant to the issue in dispute. Therefore, the motion to quash the last four topics is granted. Plaintiff is given leave, however, to ask the Rule 30(b)(6) witness questions regarding Travelers' contract with Paradigm, its practices in regard to the payment of medical bills after a workers' compensation claimant has reached maximum

medical improvement, and other similar avenues of inquiry designed to determine the accuracy of Defendant's claim that it is entitled to a 100% offset of Plaintiff's future medical expenses. If appropriate, Plaintiff shall provide Travelers and Defendant with an amended list of topics reasonably in advance of the deposition.

The Clerk is directed to provide a copy of this Order to counsel of record.

**ENTERED:** April 9, 2019

_____
Cheryl A. Eifert
United States Magistrate Judge